Filed 6/12/15  P. v. Garcia CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066654 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD253327) |
| JHONATAN GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

The Law Office of Jamahl C. Kersey, Jamahl C. Kersey; The Law Offices of Alex Amar Kannan and Alex Amar Kannan for Defendant and Appellant.

Kamala C. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

Jhonatan Garcia, a citizen of Mexico and a lawful permanent resident of the United States, faces deportation after pleading guilty to the aggravated felony offense of

possessing a controlled substance—cocaine—for sale (count 2: Health & Saf. Code, § 11351; all further undesignated statutory references will be to the Health & Safety Code unless otherwise specified) and admitting an allegation that the substance containing cocaine weighed more than four kilograms (§ 11370.4, subd. (a)(2), hereafter § 11370.4(a)(2)).

Garcia appeals an order denying his motion to withdraw his guilty plea, contending the trial court abused its discretion in denying his motion because it erroneously failed to find that his trial counsel, Stephen White, provided ineffective assistance of counsel in violation of his federal and state constitutional rights by (1) failing to advise him "of the specific immigration consequences he would face as a result of his plea," and (2) not attempting to negotiate a guilty plea to the charged count 1 offense of transporting a controlled substance in an amount exceeding four kilograms (§§ 11352, subd. (a) (hereafter § 11352(a)), 11370.4(a)(2)), which Garcia asserts "would have been more favorable to [him]."

We conclude Garcia has failed to meet his burden of demonstrating the court abused its discretion in denying his motion to withdraw his guilty plea because he has failed to establish that White provided ineffective assistance. Accordingly, we affirm the order denying Garcia's motion.

BACKGROUND

A. *Factual Background*[1]

Garcia was born in Tijuana, Mexico, and is a citizen of Mexico. He became a lawful permanent resident of the United States through his ex-wife in 2005.

On January 9, 2014, San Diego Police Department officers stopped Garcia's vehicle as part of a narcotics investigation conducted by the Narcotics Task Force. Garcia was driving the vehicle when it was stopped. A search of the trunk revealed a white trash bag that contained four brick-type packages of cocaine, each of which weighed about one kilogram. Garcia was arrested.

After he waived his *Miranda*[2] rights, Garcia told the officers that an unknown male on a motorcycle, who had previously called him from a phone number in Mexico, met him at a predetermined location, placed the white trash bag in his trunk, and told him to keep the bag at his house for safekeeping until he received instructions on where to meet later. Garcia admitted he had met the unknown male on several prior occasions, and on each occasion the man had paid Garcia $400 to take the trash bag and keep it at his home, and Garcia later had met the man at another location. Garcia also admitted he suspected he was involved in moving drugs.

---

[1]     As Garcia pleaded guilty to count 2 prior to trial, the following summary of the facts is derived from the probation officer's report and Garcia's testimony at the hearing on his motion to withdraw his guilty plea.

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

3

Garcia told the police he had six more kilograms of cocaine at his house. A search of his home revealed the six kilograms of cocaine.

B. *Procedural Background*

In a felony complaint, the San Diego County District Attorney's Office charged Garcia in count 1 with transportation for sale of a controlled substance (§ 11352(a)) and alleged that the substance containing cocaine exceeded four kilograms by weight (§11370.4(a)(2)). As pertinent here, the complaint also charged Garcia in counts 2 and 3 with possession for sale of a controlled substance (cocaine) in violation of section 11351 and alleged that the substance containing cocaine exceeded four kilograms by weight within the meaning of section 11370.4(a)(2).

In January 2014, pursuant to a plea agreement, Garcia pleaded guilty to count 2 (possession of a controlled substance for sale) and admitted the count 2 allegation that the substance containing cocaine weighed more than four kilograms.

On February 26 that year, the court sentenced Garcia pursuant to the plea agreement. Specifically, the court imposed but stayed execution of a three-year prison sentence for Garcia's count 2 conviction, and also imposed but stayed execution of a five-year sentence for Garcia's admission of the count 2 allegation that the substance containing cocaine weighed more than four kilograms. The court granted Garcia three years' formal probation and ordered him to serve 180 days in local custody. Garcia was eligible for work furlough, and he served his sentence through the work furlough program.

Thereafter, as a result of his conviction in this matter, Garcia was detained by U.S. Immigration Customs and Enforcement (ICE).

On July 17, 2014, Garcia filed his motion to withdraw his guilty plea (discussed, *post*). On August 20 of that year, following an evidentiary hearing at which Garcia (who was in federal custody) and his trial counsel White testified, the court denied the motion. Garcia's timely appeal from the order denying his motion to withdraw his guilty plea followed.

## DISCUSSION

Garcia contends the trial court abused its discretion by erroneously failing to find that his trial counsel, White, provided ineffective assistance in violation of the federal and state Constitutions by (1) failing to advise Garcia "of the specific immigration consequences he would face as a result of his plea," and by (2) not attempting to negotiate a guilty plea to the charged count 1 offense of transporting a controlled substance in an amount exceeding four kilograms (§§ 11352(a), 11370.4(a)(2)), which Garcia asserts "would have been more favorable to [him]." Garcia's contention is unavailing. We conclude Garcia has failed to meet his burden of demonstrating the court abused its discretion in denying his motion to withdraw his guilty plea because he has failed to establish that White provided ineffective assistance.

5

A.  *Background*

1.  *Guilty plea form and the advisement in paragraph No. 7d. that the guilty plea would result in deportation*

On the completed guilty plea form that Garcia, White, the Spanish language interpreter, the prosecutor, and the court all signed, Garcia initialed boxes indicating he was freely and voluntarily entering his guilty plea and he understood the enumerated constitutional trial rights he was giving up.

Garcia also initialed the box next to paragraph No. 7d. of the form, which specifically advised him his guilty plea "will result" in his deportation if it is a plea "to an 'Aggravated Felony' listed on the back of this form":

> "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest ~~may~~ *will* result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization.  Additionally, if this is a plea to an 'Aggravated Felony' listed on the back of this form, then *I will be deported*, excluded from admission to the U.S., and denied naturalization."  (Italics added.)

The typewritten word "may" in the first sentence of paragraph No. 7d. is crossed out and the word "will" is handwritten above it.

Page 4 of the guilty plea form, titled "AGGRAVATED FELONIES," lists the following offenses (among others) as aggravated felonies:  "Felony Possession of Any Controlled Substance," "Possession for Sale of Any Controlled Substance," "Sale of Any Controlled Substance," and "Transportation of Any Controlled Substance."

At the top of that page, an advisement specifically informed Garcia that, if he was a "non-citizen," a conviction of one of the listed aggravated felonies "<u>WILL</u> RESULT" in his deportation:

6

"ANY CONVICTION OF A NON-CITIZEN FOR AN 'AGGRAVATED FELONY' AS DEFINED UNDER 8 U.S.C. 1101(a)(43) <u>WILL</u> RESULT IN REMOVAL/DEPORTATION, EXCLUSION, AND DENIAL OF NATURALIZATION." (Original emphasis)

2. *Change of plea hearing and the court's advisement that Garcia would be deported as a consequence of his guilty plea*

During the January 2014 change of plea hearing at which Garcia entered his guilty plea, the court showed Garcia the completed guilty plea form and asked him whether he had gone over the form with his attorney, and whether the initials in the boxes, the signature, and the thumbprint were his. Garcia answered "Yes" to these questions. Garcia also indicated he understood the terms of the plea agreement and he was agreeing to waive his constitutional rights.

Regarding the possible immigration consequences of Garcia's plea, the court asked him whether he understood that his guilty plea would result in his deportation:

"Do you understand, sir, that if you are not a U.S. citizen, *your plea of guilty will result in your* removal or *deportation*, exclusion from admission to the United States and denial of naturalization?" (Italics added.)

Garcia replied, "Yes, sir." Garcia then pleaded guilty to the count 2 aggravated felony offense of possessing a controlled substance for sale (§ 11351) and admitted the count 2 allegation that the substance containing cocaine weighed more than four kilograms (§ 11370.4(a)(2)).

3. *Garcia's opposed motion to withdraw his guilty plea*

On July 17, 2014, Garcia filed his motion to withdraw his guilty plea pursuant to Penal Code section 1018 (discussed, *post*). Acknowledging that he had pleaded guilty to

7

an aggravated felony (specifically, a violation of section 11351), Garcia asserted that White rendered ineffective assistance of counsel because he "failed to defend [Garcia] from the actual adverse immigration consequences of the plea." Specifically, he complained that if White had properly advised and defended him, he would have pleaded guilty to section 11352(a) (count 1) so that he "would have [had] the opportunity to argue that his conviction was not an aggravated felony" that would subject him to deportation.

The People filed written opposition to the motion, arguing that Garcia had failed to meet his burden under Penal Code section 1018 of demonstrating by clear and convincing evidence that good cause existed for allowing him to withdraw his guilty plea. Asserting that this matter was "an example of 'buyer's remorse,'" the People argued that "section 11352(a) was not the offer in this case and therefore was not an available option for [Garcia] to plead to." The People also argued that White had "walked [Garcia] through the change of plea" and had "advised [him] on the offer which was [] section 11351, not 11352(a)."

a. *Evidentiary hearing and ruling*

Garcia and White testified at the hearing on Garcia's motion to withdraw his guilty plea. Garcia testified that White advised him to take the plea offer under which he would plead guilty to possession for sale of a controlled substance and admit that the weight of the substance exceeded four kilograms, and he would get a 180-day sentence. Garcia's new counsel, Jamahl Kersey, showed him the completed guilty plea form and read the text of paragraph 7d. (discussed, *ante*). Garcia indicated that he recognized the form and acknowledged that he signed the form and initialed the box next to paragraph 7d. Garcia

8

also acknowledged that White had explained paragraph 7d. to him. Garcia stated that he told·White he was not a citizen and that he did not want to be deported.

Garcia also testified that White asked him whether he was caught inside the United States or while crossing the border, because he would be automatically deported if he was caught while crossing the border. Garcia told White he was caught inside the United States. White also asked him whether he had an immigration hold, and Garcia told him he did not have an immigration hold. Garcia testified that White told him that he would not have a problem if "immigration" never got ahold of him.

Kersey asked Garcia whether the judge at his change of plea hearing had asked him whether he understood that, if he was not a United States citizen, his guilty plea would result in his removal or deportation and the denial of naturalization and exclusion from admission. Garcia did not answer that question and indicated that, with respect to paragraph No. 7d., White told him, "We don't have to worry about this because you don't have an ICE hold." Garcia indicated that, based on his discussions with White, he believed he would not be deported.

Following up on his question, Kersey asked Garcia, "[W]hen the judge [at the change of plea hearing] asked you if you understood paragraph [No. 7d.], you had said 'Yes,' right?" Garcia replied, "Yes," and acknowledged he had understood paragraph No. 7d.

Garcia testified he was not aware the word "may" had been changed to "will" in paragraph 7d., and he did not realize at the time he entered the plea that his deportation

9

would be guaranteed. He also testified he would not have pleaded guilty had he known he would be deported.

Garcia also testified he had never been "locked in jail" and acknowledged he was "desperate to get out."

On cross-examination, Garcia acknowledged that the court had informed him he "would" be deported, as opposed to "could" be deported, as a result of his count 2 guilty plea.

White testified on behalf of the prosecution that, after "quite a bit" of negotiating, the prosecutor offered Garcia, his former client, a deal under which he would plead guilty to the possession charge and admit the weight enhancement allegation, a three-year prison sentence would be stayed, the weight enhancement would be stayed, and he would be allowed to participate in the work furlough program.

Regarding the advice he gave to Garcia concerning the deportation issue, White testified:

> "I believe I advised him that at the time that he pled guilty, there was not an INS hold, that he was free to bail out, that he was eligible for work furlough, and that *some time down the road I would anticipate, perhaps when he went to renew his green card, he may face consequences on the immigration side*, and that my experience with immigration is that some sort of—you don't know whether they're going to come and pick you up or not. I mean, sometimes they do and sometimes they don't." (Italics added.)

White indicated that Garcia appeared to fully understand the immigration consequences of his plea. White testified that Garcia was advised both by the court and in the executed change of plea form that he would be deported if he pleaded guilty.

10

White stated he was aware that the word "may" in paragraph No. 7d. of the change of plea form was stricken out and replaced with the word "will," but he could not recall who made the change.

On cross-examination, White testified that when Garcia retained him, Garcia was not under any kind of an immigration hold and, therefore, he was eligible for a work furlough. White was aware that deportation was a possibility because Garcia was pleading to a felony drug charge. White stated he did not know "for certain" whether Garcia was going to be deported. White also testified he advised Garcia that "*at any time, any place, ICE may come along and pick him up*." (Italics added.) White believed the work furlough program was a relatively safe alternative for Garcia because there would not be any ICE agents checking for citizenship or immigration status there.

White testified he was aware that possession for sale of a controlled substance is an aggravated felony under immigration law and that an aggravated felony was a deportable offense. He did not know "for sure," however, whether a plea to a transportation of a controlled substance charge would have been more favorable to Garcia as a noncitizen.

White testified that the prosecutor did not offer a plea to the transportation charge. He also testified that he negotiated the best possible deal for Garcia, and Garcia took the deal willingly since he would be able to participate in the work furlough program and there was no immigration hold.

i. *Ruling*

Based on the testimony presented, the court denied Garcia's motion to withdraw his guilty plea. The court found that Garcia was advised he would be deported and that White had not misadvised him. Finding that White had advised Garcia that deportation was a requirement, the court stated that White had also advised Garcia that "maybe that requirement [would not] be executed because ICE screws up." Finding also that Garcia was not a credible witness, the court stated:

> "I think [Garcia's] testimony now that, 'Well, I didn't believe the judge because of what my attorney said,' I don't credit that. I don't believe it. I don't think that was what was going on."

B. *Applicable Legal Principles*

1. *Ineffective assistance of counsel*

"Plea bargaining and pleading are critical stages in the criminal process at which a defendant is entitled, under both the Sixth Amendment to the federal Constitution and article I, section 15 of the California Constitution, to the effective assistance of legal counsel." (*In re Resendiz* (2001) 25 Cal.4th 230, 239, abrogated on another ground by *Padilla v. Kentucky* (2010) 559 U.S. 356, 369-370 (*Padilla*).)

"It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934.)

To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, the defendant must establish not only that his counsel was ineffective, but also

12

prejudice resulting therefrom; that is, he must establish a reasonable probability that, but for his counsel's incompetence, he would not have pleaded guilty and would have insisted, instead, on proceeding to trial. (*In re Resendiz*, *supra*, 25 Cal.4th at pp. 239, 253, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *Hill v. Lockhart* (1985) 474 U.S. 52, 58-59.)

2. *Motions to withdraw a guilty plea*

Penal Code section 1018 provides, in part: "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." In general, "[m]istake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea." (*People v. Cruz* (1974) 12 Cal.3d 562, 566.)

However, "[a] plea may not be withdrawn simply because the defendant has changed his mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456 (*Nance*).) The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea. (*Id.* at p. 1457.)

The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 (*Fairbank*); *Nance, supra,* 1 Cal.App.4th at p. 1457.) "A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion." (*Nance,* at p. 1456; see also *Fairbank,* at p. 1254 ["A decision to deny a motion to withdraw a guilty

13

plea . . . is final unless the defendant can show a clear abuse of [the trial court's] discretion."].)

"Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*Fairbank, supra*, 16 Cal.4th at p. 1254.) Thus, our role in determining whether Garcia has satisfied his burden of producing clear and convincing evidence in the trial court in support of his motion to withdraw his guilty plea is a limited one, because "'[a]ll questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge. We cannot reverse his order if there is substantial evidence or a reasonable inference to be drawn from it which supports the order. Where two conflicting inferences may be drawn from the evidence it is our duty to adopt the one supporting the challenged order.'" (*People v. Harvey* (1984) 151 Cal.App.3d 660, 667.)

C. *Analysis*

Garcia's contention that the court abused its discretion in denying his motion to withdraw his guilty plea is premised on his claim that White provided ineffective assistance of counsel by (1) failing to advise Garcia "of the specific immigration consequences he would face as a result of his plea," and by (2) not attempting to negotiate a guilty plea to the charged count 1 offense of transporting a controlled substance in an amount exceeding four kilograms, which Garcia asserts "would have been more favorable to [him]." We reject Garcia's contention because the premise on which it is based is not supported by the record.

14

We first conclude that Garcia has failed to meet his burden of demonstrating that White provided ineffective assistance of counsel by failing to advise him of the immigration consequences he would face as a result of his plea.  In *Padilla, supra,* 559 U.S. 356, the United States Supreme Court explained that counsel "must inform [a noncitizen] client whether his plea carries a risk of deportation."  (*Id*. at p. 374.)

Here, the guilty plea form Garcia initialed and signed informed him that he would be deported if he was not a United States citizen and he was pleading guilty to one of the aggravated felonies listed in the form.  Specifically, Garcia initialed the box next to paragraph No. 7d., which advised him his guilty plea "will result" in his deportation if it "is a plea to an 'Aggravated Felony' listed on the back of this form."  Page 4 of the guilty plea form, titled "AGGRAVATED FELONIES," informed Garcia that, if he was a "non-citizen," a conviction of one of the aggravated felonies listed on that page "WILL RESULT" in his deportation.  One of the listed aggravated felonies was "Possession for Sale of Any Controlled Substance."  By pleading guilty to possession of a controlled substance for sale in violation of section 11351, Garcia pleaded guilty to an aggravated felony that he knew was a was a deportable offense.

The record also shows that, at the change of plea hearing, the court asked Garcia whether he understood that, if he was not a United States citizen, his guilty plea would result in his removal or deportation and the denial of naturalization and exclusion from admission.  Garcia replied, "Yes, sir," and then pleaded guilty to count 2.

At the evidentiary hearing on his motion to withdraw his guilty plea, Garcia acknowledged on direct examination that he had reviewed paragraph No. 7d. with White

15

and he understood its provisions when he initialed the box next to it. On cross-examination, Garcia also acknowledged that the court had informed him at the change of plea hearing that he "would" be deported, as opposed to "could" be deported, as a result of his count 2 guilty plea. In addition, White testified that he spoke with Garcia about the specific immigration consequences of his plea and how, "at any time, any place, ICE may come along and pick him up." Furthermore, in denying Garcia's motion, the court found that Garcia was not a credible witness. Specifically, the court stated: "[Garcia's] testimony . . . that, 'Well, I didn't believe the judge [at the change of plea hearing] because of what my attorney said,' I don't credit that. I don't believe it." We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.).

The foregoing record shows that White properly advised Garcia that his guilty plea to the aggravated felony offense of possessing a controlled substance for sale in an amount exceeding more than four kilograms carried "a risk of deportation." (*Padilla*, *supra*, 559 U.S. at pp. 373-374.)

Garcia's reliance on *People v. Soriano* (1987) 194 Cal.App.3d 1470, is misplaced. In that case, the defendant's trial counsel gave him "only a pro forma caution" that his guilty plea might have immigration consequences, and the defendant's declaration showed he did not know he was exposing himself to deportation by pleading guilty. (*Id.* at p. 1482.) Here, Garcia was fully aware from the advisements in the guilty plea form, the trial court's admonition at the change of plea hearing, and his discussions with White

16

that he was exposing himself to the risk of deportation by pleading guilty to count 2. Unlike defense counsel in *Soriano*, White did not give Garcia a mere pro forma caution. White testified at the hearing on Garcia's motion to withdraw his guilty plea that he spoke with Garcia about the specific immigration consequences of his plea and how, "at any time, any place, ICE may come along and pick him up."

For all of the foregoing reasons, we conclude that Garcia has failed to meet his burden of demonstrating that White provided ineffective assistance of counsel by failing to advise him of the immigration consequences of his plea.

We also conclude Garcia has failed to meet his burden of demonstrating that White provided ineffective assistance of counsel by not attempting to negotiate a guilty plea to the charged offense of transporting a controlled substance in an amount exceeding four kilograms. White testified that the prosecutor did not offer a plea to the transportation charge. Such an offer was "not on the table." He also testified that he negotiated the best possible deal for Garcia, who took the deal willingly.

Garcia's reliance on *People v. Bautista* (2004) 115 Cal.App.4th 229 is unavailing. *Bautista* is distinguishable in that the evidence showed that defense counsel gave the defendant "only a pro forma caution" that his guilty plea might have immigration consequences and that the prosecutor would have accepted an offer that the defendant plead to an offense that was not an aggravated felony for immigration purposes. (*Id*. at pp. 241-242.) White did not give Garcia a mere pro forma caution, and White's testimony, which the court credited, shows the prosecutor was not amenable to accepting

17

an offer that Garcia plead guilty to an offense that was not an aggravated felony for immigration purposes.

In sum, as Garcia has failed to meet his burden of showing that White's performance fell below an objective standard of reasonableness under prevailing professional norms, we conclude that Garcia also has failed to meet his burden under Penal Code section 1018 of demonstrating by clear and convincing evidence that good cause existed for allowing him to withdraw his guilty plea. Accordingly, we affirm the order denying Garcia's motion to withdraw his guilty plea.

DISPOSITION

The judgment is affirmed.

_____

NARES, J.

WE CONCUR:

_____

McCONNELL, P. J.

_____

HALLER, J.

18